# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:21-CV-064-DCK

| | |
|---|---|
| **ALLISON B. STURGILL,** | ) |
| **Plaintiff,** | ) |
| | ) **ORDER** |
| v. | ) |
| | ) |
| **KILOLO KIJAKAZI**[1], | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Summary Judgment" (Document No. 14) and Defendant's "Motion For Summary Judgment" (Document No. 18). The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and these motions are ripe for disposition. After careful consideration of the written arguments, the administrative record, and applicable authority, the undersigned will direct that Plaintiff's "Motion For Summary Judgment" be <u>denied</u>; that Defendant's "Motion For Summary Judgment" be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

## I.  BACKGROUND

Plaintiff Allison B. Sturgill ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits. (Document No. 1). On or about July 10, 2019, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405, alleging an

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew M. Saul as Defendant in this action.

inability to work due to a disabling condition beginning November 15, 2016. (Transcript of the Record of Proceedings ("Tr.") 12, 190-94). The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on January 31, 2020, and again after reconsideration on May 6, 2020. (Tr. 12, 105, 115). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> On your application you stated that you are disabled because of interstitial cystitis.
> The medical evidence shows that your condition is not severe enough to be considered disabling. You are able to think, act in your own interest, communicate, handle your own affairs, and adjust to ordinary emotional stresses without significant difficulties.
> We do not have sufficient vocational information to determine whether you can perform any of your past relevant work. However, based on the evidence in file, we have determined that you can adjust to other work. It has been decided, therefore, that you are not disabled according to the Social Security Act.

(Tr. 115).

Plaintiff filed a timely written request for a hearing on June 4, 2020. (Tr. 12, 123). On December 1, 2020, Plaintiff appeared and testified at a hearing before Administrative Law Judge Richard Jackson (the "ALJ"). (Tr. 12, 26-61). In addition, Julie A. Harvey, a vocational expert ("VE"), and Daniel S. Johnson, Plaintiff's attorney, appeared at the hearing. (Tr. 12, 26).

The ALJ issued an unfavorable decision on January 28, 2021, denying Plaintiff's claim. (Tr. 12-21). On February 10, 2021, Plaintiff filed a request for review of the ALJ's decision, which was denied by the Appeals Council on March 23, 2021. (Tr. 1, 184). The ALJ decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on April 20, 2021. (Document No. 1). On June 8, 2021, the undersigned was assigned to this case as the referral Magistrate Judge. The parties consented to Magistrate Judge jurisdiction

on August 18, 2021, and this case was reassigned to the undersigned as presiding judge. (Document No. 11).

Plaintiff's "Motion For Summary Judgment" (Document No. 14) and Plaintiff's "Memorandum In Support Of Motion For Summary Judgment" (Document No. 15) were filed November 11, 2021; and Defendant's "Motion For Summary Judgment" (Document No. 18) and "Memorandum In Support Of Defendant's Motion For Summary Judgment" (Document No. 19) were filed February 10, 2022. Plaintiff declined to file a reply brief, and the time to do so has lapsed. See Local Rule 7.2 (e).

The pending motions are now ripe for review and disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between January 1, 2018[2], and the date of the ALJ decision.[3] (Tr. 13). To establish entitlement to benefits, Plaintiff has the burden of proving disability within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

> (1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;

---

[2] Plaintiff amended her alleged disability onset date from November 15, 2016, to January 1, 2018. (Tr. 13).

[3] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v).

The burden of production and proof rests with the claimant during the first four steps; if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy. Pass, 65 F.3d at 1203. In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 20).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since January 1, 2018, Plaintiff's amended, alleged disability onset date. (Tr. 15). At the second step, the ALJ found that interstitial cystitis was a severe impairment.[4] (Tr. 15). At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 16).

---

[4] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform light work activity, with the following limitations:

> stand or walk for six hours of an eight-hour workday; sit up to 60 minutes at one time and then stand or walk for five minutes, for a total of two hours in total of an eight-hour workday; lift or carry up to 20 pounds occasionally and ten pounds or less frequently; cannot climb ladders, ropes, or scaffolds; can frequent stoop or kneel; can occasionally crouch, crawl, and climb ramps or stairs; and would require four extra restroom breaks during the workday of five minutes' duration.

(Tr. 17). In making this finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R 404.1529 and SSR 16-3p." Id.

At the fourth step, the ALJ held that Plaintiff could not perform her past relevant work as a medical transcriptionist. (Tr. 19). The ALJ opined that Plaintiff "cannot tolerate the amount of sitting required of her past relevant work." Id. At the fifth and final step, the ALJ concluded based on the testimony of the VE and "considering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 20). Specifically, the VE testified that according to the factors given by the ALJ, occupations claimant could perform included a general clerk, a medical record clerk, and an order detailer. (Tr. 20). The ALJ concluded that Plaintiff "has not been under a disability, as defined by the Social Security Act, from November 15, 2016, through the date of this decision," January 28, 2021. (Tr. 20-21).

Plaintiff on appeal to this Court makes the following assignments of error: (1) the ALJ's findings regarding the medical opinion evidence were not supported by substantial evidence; and (2) the ALJ erred in finding the Plaintiff capable of light-duty work. (Document No. 15, pp. 1-2).

6

In response, Defendant argues that "the evidence supporting the ALJ's decision far exceeds the [evidentiary] threshold to survive this Court's deferential review." (Document No. 19, p. 6) (internal quotation omitted). Defendant asserts that not only does Plaintiff fail to establish a basis for her claim, "but rather invites this Court to impermissibly reweigh the evidence and craft a different RFC merely because she disagrees with the ALJ's decision." Id. (citing Hays, 907 F.2d at 1456; Schweiker, 795 F.2d at 345; Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972)).

The undersigned will discuss each of these contentions in turn.

**A.    Medical Opinions**

In the first assignment of error, Plaintiff argues that the ALJ erred by "using the opinion of a one-time consultative examiner to deny [Plaintiff's] claim over the opinions of [her] primary care physician and her urologist." (Document No. 15, p. 5). According to Plaintiff, urologist Dr. Catherine Ann Matthews, diagnosed her interstitial cystitis[5], a condition which causes Plaintiff to have "vaginal pain and… urinate ten or more times per day." Id. at p. 3. Plaintiff summarizes Dr. Matthews' June 20, 2019, medical source statement regarding Plaintiff's condition as follows:

> [Dr. Matthews] had three appointments with [Plaintiff] during the preceding six-months; [Plaintiff] has interstitial cystitis which causes her to experience urinary frequency, anxiety, bladder/pelvic pain, and pain with sitting; [Plaintiff's] clinical findings included suprapubic tenderness on physical examination and high tone pelvic floor dysfunction; [Plaintiff] urinates ten or more times per day; [Plaintiff] would require unscheduled restroom breaks during a working day, ten times per day more than five minutes per break; [Plaintiff] would be absent from work for more than four days per month.

(Document No. 15, p. 3) (citing Tr. 402-05).

---

[5]  According to the Mayo Clinic, interstitial cystitis is defined as a chronic condition causing bladder pressure, bladder pain, and sometimes pelvic pain. Mayo Clinic, *Diseases & Conditions*, https://www.mayoclinic.org/diseases-conditions/interstitial-cystitis/symptoms-causes/syc-20354357 (last visited July 19, 2022).

Separately, Plaintiff asserts that Dr. Leonard "has been [Plaintiff's] primary care physician at all times relevant to this case." Id. According to Plaintiff, Dr. Leonard reported that Plaintiff could not work due to her interstitial cystitis as it "limits her ability to sit or stand for prolonged periods." Id. (citing Tr. 428). Plaintiff summarizes Dr. Leonard's June 25, 2019, medical source statement regarding Plaintiff's limitations as a result of her condition as follows:

> [Dr. Leonard] had eight visits with [Plaintiff] since January 2018; [Dr. Leonard] had known [Plaintiff] since 1994; [Plaintiff's] symptoms include urinary frequency, bladder and pelvic pain; [Plaintiff] would require unscheduled work breaks, at least every hour, due to urinary frequency and bladder pressure; [Plaintiff] would be "off-task" for more than 25% of a workday; [Plaintiff] would miss more than four days of work per month.

(Document No. 15, p. 4) (citing Tr. 406-09).

In contrast, Plaintiff argues, Dr. Burgess, the state examiner, "did not examine [Plaintiff] in regard to her complaints of interstitial cystitis." (Document No. 15, p. 4). Instead, Plaintiff asserts, "he completed a basic physical exam" without having "any background in urology" or "review[ing] any information from [Plaintiff's] treating physicians before submitting his report." Id. (citing Tr. 455-65). "Dr. Burgess opined that 'the claimant continues to suffer with chronic pain in a way that does not prevent persistence of activity for any prolonged period of time, either standing, sitting, or even with a combination.'" Id. (citing Tr. 458). Plaintiff further notes that Dr. Burgess opined "Plaintiff has 'frequency and urgency which prevent her from staying at station for long periods and prevents her from being able to stay without adequate warning.'" Id. (internal quotations omitted) (citing Tr. 458).

Plaintiff notes that under the regulations medical opinions must be weighed pursuant to the following factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) the medical source's specialization; and (5) other factors such as the medical

8

source's familiarity with the other evidence in the claim. Id. (citing 20 C.F.R. 404.1520c(c)(1)-(5)). Plaintiff argues that proper evaluation of these factors "shows that the ALJ's decision to deny [Plaintiff's] claim was not supported by substantial evidence and constituted legal error." Id. at p. 5.

First, Plaintiff argues that the findings of Dr. Matthews and Dr. Leonard were both "fully supported" by their ongoing treatment of Plaintiff and "consistent with one another and [Plaintiff's] complaints of pain and urinary frequency." (Document No. 15, p. 5). Plaintiff notes that Dr. Matthews has (1) performed physical evaluations and tests of Plaintiff to diagnose her interstitial cystitis, (2) conducted specialized pelvic floor examinations, (3) ordered physical therapy for Plaintiff and instructed her on exercises to alleviate symptoms, and (4) prescribed medication for Plaintiff. Id. at p. 6 (citing Tr. 367-68, 371, 373). Plaintiff notes that Dr. Leonard has "reported throughout 2018 and into 2019 that [Plaintiff] was suffering from urinary frequency, urgency, and suprapubic pain," and "consistently noted [Plaintiff's] complaints and referred her for urological evaluation." Id. (citing Tr. 324-27). Plaintiff argues that the "opinions submitted by Dr. Matthews and Dr. Leonard meet the requirement for supportability and consistency under the regulations," however "the same cannot be said for the opinion of the disability examiner." Id.

Plaintiff also argues that the third factor of the regulations requires the ALJ to "consider the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship." (Document No. 15, p. 6) (citing 20 C.F.R. 404.1520c(c)(3)(i)-(v)). According to Plaintiff, these factors "clearly weigh in favor of the opinions of Dr. Matthews and Dr. Leonard," as they had "established treating relationships with [Plaintiff]." Id. In contrast, "the state disability examiner had no treating relationship with the Plaintiff." Id.

9

Plaintiff further asserts that under the fourth factor, "the medical opinion… of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than a medical opinion… of a medical source who is not a specialist." (Document No. 15, p. 7) (citing 20 C.F.R. 404.1520c(c)(4)). Plaintiff argues that "this factor obviously weighs in favor of Dr. Matthews' opinions rather than those of the disability examiner" since she is a "urologist with advanced training and education" and "there is no indication that the disability examiner had any specialty." Id.

Next, Plaintiff asserts that "other factors that tend to either support or contradict a medical opinion" including "whether there is evidence showing a medical source has familiarity with other evidence in the claim" must also be considered. (Document No. 15, p. 7) (citing 20 C.F.R. 404,1520c(c)(5)). Plaintiff argues that this factor "also weighs in favor of the opinions of [Plaintiff's] treating physicians over the state disability examiner" because "there is no evidence that the state doctor reviewed any of the medical evidence in [Plaintiff's] claim before rendering his opinion. Id. On the other hand, Plaintiff continues, "it is clear that Dr. Matthews and Dr. Leonard were familiar with [Plaintiff's] history of treatment for interstitial cystitis." Id.

Plaintiff contends that the "ALJ erred in finding the opinion of a one-time state disability examiner to be persuasive over the opinions of [Plaintiff's] treating physician and urologist under the guidelines set out in 20 C.F.R 1520c." (Document No. 15, p. 7). According to Plaintiff, all of these factors "weigh in favor of the opinions of [Plaintiff's] providers" and none "support the opinion of the disability examiner." Id. Therefore, Plaintiff concludes, "[t]he ALJ's decision to credit the disability examiner over Dr. Leonard and Dr. Matthews was not supported by substantial evidence." Id. at pp. 7-8.

In response, Defendant argues that "[t]he ALJ properly evaluated the persuasiveness of the opinion evidence and explained the supportability and consistency of the opinions based on the entire evidentiary record." (Document No. 19, p. 13). Defendant asserts that Plaintiff's "treatment response [was] inconsistent with disabling limitations," and thus the ALJ observed that the "allegations lacked the evidentiary support to prove disability." Id.

Defendant contends that "the agency will not defer or give any specific weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from the claimant's own medical sources." (Document No. 19, p. 15) (citing 20 C.F.R. § 404.1520c(a)(2017)). Instead, Defendant continues, "the ALJ focuses on the persuasiveness of the medical opinion(s) or prior administrative medical finding(s) while considering [the] five regulatory factors" as listed above. Id. (citing 20 C.F.R 404.1520c(a)-(c)(2017)).

Defendant argues that Plaintiff's assertion that Drs. Leonard's and Matthews' status as her treating physicians requires the ALJ's deference to their medical opinions "is not legally supported." (Document No. 19, p. 15). Defendant asserts that "[w]hile the ALJ must articulate how he considered the medical opinions, there are no particularized procedures that the ALJ must follow when considering opinions from treating sources." Id. (citing 20 C.F.R. 404.1527(c)(2)(2016); 20 C.F.R. 404.1527(c)(2)(2017); 20 C.F.R. 404.1520c(b)(2017)).

Defendant further contends that the ALJ appropriately found "Drs. Leonard's and Matthews's opinions were not persuasive because they were not entirely consistent with other medical evidence of record and Plaintiff's testimony." Id. at p. 16. Specifically, Defendant asserts, "the treatment records document Plaintiff's improved symptoms with treatment and lifestyle changes that directly contradict the need for excessive restroom breaks, chronic absenteeism, and time off task beyond customary allowances to account for Plaintiff's pain and

11

related symptoms as indicated in Drs. Leonard and Matthews's opinions." Id. Defendant continues, "Plaintiff testified that she could sustain standing and sitting more than what her treating sources provided for in their opinions." Id. (citing Tr. 38, 40, 46). According to Defendant, it appears that Plaintiff's treating sources "based their functional assessments primarily on Plaintiff's subjective complaints at onset, minimally considering the effect of treatment and lifestyle changes that occurred afterward." Id.

Defendant argues that Plaintiff's assertion that "Dr. Matthews's diagnosis of interstitial cystitis is enough to support opinions indicating disability" is incorrect. (Document No. 19, p. 17). Instead, Defendant argues that "[a] mere diagnosis of a condition is not enough to prove disability;" "[t]here must be a showing of functional loss." Id. (citing Gross v. Heckler, 785 F.2d 1163, 1165 (4th Cir. 1986).

Regarding the ALJ's consideration of the state examiner's opinion, Defendant argues that the ALJ "fully considered Drs. Broman-Fulks and Burgess's medical impressions following their one-time examinations when evaluating their opinions." Id. (citing Tr. 19). This is appropriate, Defendant contends, because the ALJ must consider "administrative medical findings" in accordance with the regulations and "Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation." Id. at pp. 17-18 (citing 20 C.F.R. § 404.1513a(b)(1)(2017)) (internal citations omitted).

Though the ALJ found the consultive examiners' opinion most persuasive, Defendant asserts that "there is no requirement that an ALJ base his RFC finding… on a medical opinion." (Document No. 19, p. 18) (citing Wykle v. Saul, No. 1:19-CV-155-MOC, 2020 WL 697445, at *6 (W.D.N.C. Feb. 11, 2020); 20 C.F.R. §404.1527(a)-(c); Felton-Miller v. Astrue, 459 Fed. App'x. 226, 2301-31 (4th Cir. 2011); Jackson v. Comm'r Soc. Sec., 2014 WL 1669105, at *2 (D. Md.

12

Apr. 24, 2014)). In fact, Defendant continues, "determining [Plaintiff's] RFC is solely within the province of the ALJ who considers all of the relevant medical and other evidence when making a finding." Id. at p. 19 (citing 20 C.F.R. § 404.1545(a)(3); § 404.1527(e); § 404.1546) (internal quotations omitted). Ultimately, Defendant concludes, "the ALJ appropriately evaluated the opinion evidence and provided sufficient rationale in the written decision to explain his assessment of the supportability and consistency of the aforementioned opinions." Id. (citing Tr. 15-19).

The undersigned finds that the ALJ properly considered the medical sources' opinions and that substantial evidence supported his RFC finding.

When determining whether an opinion is persuasive, "[t]he ALJ is not required to explain how she considered each of the relevant factors;" rather "the ALJ need only explain how she considered the most important factors" of "supportability" and "consistency." Corbin v. Kijakazi, 2022 WL 990487, at *2 (E.D.N.C. Mar. 31, 2022) (citing 20 C.F.R. § 404.1520c(b)(2)-(3)). The regulations "plainly impos[e] an articulation requirement," however they do not require the ALJ to use "any particular language or adhere to any particular format" in his decision. Id.; Tina B. v. Kijakazi, 2022 WL 2057739, at *7 (E.D.Va. May 6, 2022).

The court in Tina B found that "the ALJ properly considered the supportability of [the medical source's] opinion." Tina B., 2022 WL 2057739, at *7. The fact that the ALJ did not use the words "supportability" "bears no relevance" in the court's review of the ALJ's satisfactory analysis. Id. Rather, the ALJ's summation and evaluation of the medical and other evidence noted multiple examples where the medical source's opinion lacked support based on other medical examinations, medical evidence, and the claimant's own testimony regarding her medications. Id. at *8. Therefore, the ALJ in Tina B. complied with the "articulation standard" which "enable[d] [the] reviewing court to trace the path of an adjudicator's reasoning." Id. at *7.

13

Here, the ALJ is not required to "explain how [he] considered each of the relevant factors," but must explain his consideration of "the most important factor[s]." See Corbin, 2022 WL 990487, at *2 In his opinion, the ALJ articulates his consideration of the "consistency" requirement explicitly by noting: (1) Plaintiff's "testimony is inconsistent with her reports to the various treating and examining providers in the record;" (2) the opinions of Dr. Matthews and Dr. Leonard were not fully persuasive "as they are not entirely consistent with the other medical evidence of record and the claimant's testimony;" and (3) Dr. Broman-Fulks' opinion is persuasive "as it is consistent with other medical evidence of record (Tr. 18-19) (citing Tr. 456, 458, 324, 449, 402-09, 448-53).

The ALJ does not explicitly use the word "supportability" in his examination of the medical sources' opinions, however that "bears no relevance" to the undersigned's review of the ALJ decision. Instead, in finding Dr. Matthews' and Dr. Leonard's opinions not "fully persuasive," the ALJ considers the supportability of each opinion by evaluating medical and other evidence as it relates to the opinions and Plaintiff's overall condition such as: (1) both doctors' treatment notes regarding Plaintiff's condition; (2) the medicine each doctor prescribed and how Plaintiff used it; (3) the testimony provided by Plaintiff; and (4) the opinions provided by the other examiners. (Tr. 16-18) (citing Tr. 319-63, 364-401, 402-05, 406-08, 422-47, 454-59). This adequately satisfies the "articulation standard" required by the regulations and allows the undersigned "to trace the path of [the ALJ's] reasoning" in determining Plaintiff's RFC. See Tina B., 2022 WL 2057739, at *7. Like the court in Tina B., the undersigned finds "the ALJ properly considered the supportability of [the medical source's] opinion." Id.

It appears to the undersigned that although the ALJ did not find the treating physicians' opinions to be "fully persuasive," he certainly accepted their diagnosis of IC and included

limitations in the RFC that reflect their opinions. In the end, he disagreed that her condition is disabling – a decision reserved to the Commissioner. Notably, the ALJ was also not "fully" persuaded by the State Agency consultants who found Plaintiff capable of medium work, while the ALJ limited Plaintiff to light work. (Tr. 17, 19).

In short, although the undersigned may have weighed the medical opinions differently than the ALJ, it appears that the ALJ appropriately considered the medical opinions pursuant to the regulations' requirements and that substantial evidence supports the ALJ's decision.

### B. RFC Determination

Next, Plaintiff argues that "[t]he ALJ erred in finding [Plaintiff] capable of light-duty work." (Document No. 15, p. 8). According to Plaintiff, because Dr. Matthews and Dr. Leonard opined that Plaintiff "would require excessive breaks" and "[t]he vocational expert testified that a claimant with such limitations/restrictions would not be able to maintain competitive work," the ALJ's finding of her RFC is "not supported by substantial evidence." Id.

Further, Plaintiff argues that her "limited activities" such as light household chores, grocery shopping, and attending church, "do not translate into the ability to perform substantial, gainful work activity." (Document No. 15, p. 9). By "attempting to equate such activities to the ability to work," Plaintiff argues that the ALJ erred in determining that Plaintiff can perform light-work because "these activities simply do not translate to work activity on a full-time basis as required by Social Security regulation." Id.

In response, Defendant argues that "[t]he ALJ provided the requisite analysis and support when evaluating Plaintiff's symptoms and the opinion evidence to determine the RFC." (Document No. 19, p. 7). Defendant contends "the ALJ carefully examined the evidence and accounted for limitations he found to be supported by such evidence." Id. (citing Tr. 15-19); Craig

15

v. Chater, 76 F.3d 585, 595 (4th Cir. 1996)). In making the determination that Plaintiff could perform light-work, Defendant asserts that the ALJ considered: (1) "Dr. Leonard's records documenting her treatment in 2018 and 2019" (Tr. 15-19, 319-63, 422-47); (2) "Dr. Matthews's treatment records from 2019 and 2020" (Tr. 15-19, 448-59); and (3) mental and physical consultative examinations where Plaintiff reported that "she experiences infrequent flares of symptoms" (Tr. 17, 18, 448). Id. at pp. 8-10. Defendant contends that these records show that Plaintiff's symptoms can be "reasonably controlled by medication or treatment" and thus are not disabling. Id. at p. 10.

Defendant argues that the RFC finding is consistent with Plaintiff's testimony that she must limit sitting, she stands a lot to relieve bladder pressure, she does not have problems standing, she stays up during the day and only lies down at night, she spends five minutes or less in the bathroom, and she can go two sometimes three hours without using the restroom on a good day. (Document No. 19, p. 11) (citing Tr. 38, 40, 46). Additionally, Defendant asserts that the vocational expert testified that "brief five-minute restroom breaks would not preclude competitive work as it comports with customary work breaks and permissible time off task." Id. (citing Tr. 56).

Regarding the ALJ's consideration of Plaintiff's daily activities, Defendant argues that "Plaintiff's daily activities were not the only factor the ALJ relied upon." Id. Defendant asserts that the ALJ also considered "the location, duration, frequency, and intensity of her pain and other symptoms, precipitating and aggravating factors, the effectiveness of medication and other treatment, and other measures Plaintiff used to alleviate her pain." Id. at pp. 11-12 (citing Tr. 15-19; 20 C.F.R. 404. 1250(c)(3)(ii)-(vii)). From these facts, Defendant argues, the ALJ may draw meaningful inferences when evaluating Plaintiff's symptoms and specific limitations in the RFC. Id. at p. 12.

16

Case 5:21-cv-00064-DCK   Document 20   Filed 07/29/22   Page 16 of 19

Lastly, Defendant contends that the ALJ's second hypothetical was sufficient because it "fairly set out all of Plaintiff's impairments" and it "adequately reflect[ed] the RFC for which the ALJ had sufficient evidence." Id. (citing Tr. 17, 53-33; Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989); Cole v. Berryhill, 1:17-CV-057-GCM, 2018 WL 893769, at *5-*6 (W.D.N.C. Feb. 14, 2018)).

The undersigned finds the ALJ relied on substantial evidence to support the RFC finding and the ALJ was entitled to use Plaintiff's daily activities as one of a variety of factors when determining her RFC.

When determining the extent to which a claimant's symptoms limit the capacity for work, the regulations note that in addition to objective medical evidence, "other evidence" will be considered "[b]ecause symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone." 20 C.F.R. § 404.1529(c)(2)-(3). The "other evidence" considered may include "daily activities" as one of a variety of factors since they are "an important indicator of the intensity and persistence of your symptoms." See id. § 404.1529(c)(3)(i). In addition to "daily activities," the ALJ may consider factors such as (1) "location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;" (2) "precipitating and aggravating factors;" (3) "the type dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate [Plaintiff's] pain or other symptoms;" (4) "treatment other than medication;" (5) "any measures [Plaintiff] use[s]… to relieve [Plaintiff's] pain;" and (6) "other factors concerning [Plaintiff's] functional limitations and restrictions due to pain." 20 C.F.R § 404. 1529(3)(ii)-(vii).

Here, the ALJ relied on Plaintiff's testimony and medical source opinion to support the RFC finding. (Tr. 18-19). This serves as "relevant evidence as a reasonable mind might accept

as adequate to support a conclusion," and thus, the Court should defer to the ALJ's RFC finding. Smith, 782 F.2d at 1179; Bird v. Comm'r of Soc. Sec. Admin, 699 F.3d 337, 340 (4th Cir. 2012).

Further, the ALJ properly considered Plaintiff's "daily activities" as one of a variety of factors when determining her RFC. See (Tr. 18-19). In addition to Plaintiff's "daily activities," the ALJ also considers (1) the location, duration, frequency, and intensity of Plaintiff's pain and symptoms; (2) precipitating and aggravating factors such as Plaintiff's diet and certain medications; (3) the effect of medications on Plaintiff's condition; and (4) measures taken by Plaintiff to relieve her pain and symptoms such as "sitting with her left leg over the side of a chair, "gingerly climbing stairs," and "lying down with pillows between her legs." (Tr. 18).

The undersigned also notes that Defendant's briefing in this case was particularly thorough and persuasive, and as noted above, Plaintiff declined the opportunity to rebut Defendant's compelling arguments.

Based on the foregoing, the undersigned is not convinced the ALJ erred in finding Plaintiff capable of "light-duty work."

## IV.    CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will direct that the Commissioner's decision be affirmed.

**IT IS, THEREFORE, ORDERED** that: Plaintiff's "Motion For Summary Judgment" (Document No. 14) is **DENIED**; the Defendant's "Motion For Summary Judgment" (Document No. 18) is **GRANTED**; and the Commissioner's determination is **AFFIRMED**.

18

Case 5:21-cv-00064-DCK   Document 20   Filed 07/29/22   Page 18 of 19

**SO ORDERED**.

Signed: July 28, 2022

David C. Keesler
United States Magistrate Judge

19